UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RANOLFO VENTILLO,

                    Plaintiff,

          -against-

ROCKLAND COUNTY SHERIFF LOUIS
FALCO III, sued in his official and individual
capacities, et al.,

                    Defendants.

**MEMORANDUM OPINION
AND ORDER**

19-CV-03664 (PMH)

PHILIP M. HALPERN, United States District Judge:

Plaintiff Ranolfo Ventillo ("Plaintiff"), a former corrections officer employed by Rockland County ("County"), brings this action under 42 U.S.C. § 1983 against Rockland County Sheriff Louis Falco III ("Falco"), Detective Sergeant Ken Johnston ("Johnston") of the Rockland County Sheriff's Department, Detective Sergeant John Lynch ("Lynch") of the Rockland County Intelligence Division, and the County (collectively "Defendants")[1] for constitutional violations resulting from Plaintiff's 2016 arrest. Plaintiff brings seven claims for relief against one or more Defendants: (1) false arrest; (2) malicious prosecution; (3) deprivation of the right to a fair trial; (4) violation of procedural due process; (5) failure to intervene; (6) a *Monell* claim premised on Falco's participation in the constitutional violations; and (7) a *Monell* claim based on the practice of using the Rockland County District Attorney's Office ("D.A.'s Office") to terminate corrections officers. (Doc. 3, "Compl." ¶¶ 141-86).

The County Defendants filed their Answer on July 12, 2019. (Doc. 26). Lynch, represented separately, filed an Answer on October 28, 2019 (Doc. 36) and thereafter filed an Amended Answer that contained two crossclaims against the County Defendants on February 11, 2020 (Doc.

---

[1] The County, Falco, and Johnston are referred to collectively as the "County Defendants."

49 ¶¶ 223-29). The County Defendants never responded to the crossclaims as required under Federal Rule of Civil Procedure 12(a)(1)(B). This matter was reassigned to me on March 17, 2020.

On March 26, 2020, Lynch filed a motion "for an Order pursuant to Fed. R. Civ. P. 12(c) and/or 12(f) dismissing plaintiff's complaint with prejudice" as against him. (Doc. 54; Doc. 56, "Lynch Br."). That motion was supported by a declaration, signed by counsel, to which various documents were attached that purported to be referenced in, or relied upon in bringing, the action. (*See* Doc. 55, Declaration of Mark A. Radi, "Radi Decl."). On March 31, 2020, the County Defendants filed their own motion under Federal Rule of Civil Procedure 12(c). (Doc. 57; Doc. 58, "County Br."). That motion, in sync with Lynch, was supported by a declaration, signed by counsel, which submitted various documents argued to be integral to the Complaint. (*See* Doc. 61, Declaration of Robert B. Weissman, "Weissman Decl.").[2] Plaintiff opposed both motions in a single brief filed on April 20, 2020. (Doc. 63, "Opp.").[3] Notably, while Defendants submitted a significant number of extraneous documents for the Court's consideration on these motions, Plaintiff did not object to their consideration in any way. (*See generally id.*). Lynch's reply brief was filed on April 29, 2020 (Doc. 64, "Lynch Reply"), and the motions were briefed fully with the filing of the County Defendants' reply on May 18, 2020 (Doc. 65, "County Reply").[4]

For the reasons set forth below, the Court GRANTS Defendants' motions for judgment on the pleadings and DISMISSES Lynch's crossclaims without prejudice.

---

[2] Citations to documents submitted by both Lynch and the County Defendants shall refer to the copies attached to the Weissman Declaration.

[3] Plaintiff filed three "exhibits" as attachments to his brief. (*See* Doc. 63-1, Doc. 63-2, Doc. 63-3). While this practice violates Local Civil Rule 7.1(a)(3) of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, the first two documents were submitted properly by Defendants and the third is the Complaint. As such, the Court will consider the documents.

[4] Judge Seibel, before whom this action proceeded prior to its reassignment to me, granted Plaintiff leave to file an Amended Complaint. (*See* Dec. 20, 2019 Min. Entry). Plaintiff did not so file.

## BACKGROUND

I.   The Investigation Prior to the January 2016 Overdose

As reflected in Johnston's Investigative Report ("Johnston Report"), he began investigating Plaintiff months before the incidents in the Complaint. (Doc. 55-3, Radi Decl. Ex. C; Doc. 61-10, Weissman Decl. Ex. J, "Rpt." at 2).[5] On May 13, 2015, Johnston interviewed Brooke Atzl ("Brooke") who was then in the custody of the Clarkstown Police Department in connection with an unspecified "domestic incident." (*Id.*). Brooke advised that her sister, Christina Atzl ("Christina"), was "involved" with Plaintiff. (*Id.*). In pertinent part, Johnston noted:

> On 05/13/15 I did interview Brooke . . . . This interview was prompted by Brooke . . . due to the fact that her sister Christina . . . is sexual [sic] involved with a corrections officer who she knows as Rudy or Ronnie Ventillo. Brooke stated that her sister is a prostitute and has a relationship with the corrections officer which could best be described as a business arrangement, he gives her Alcohol and drugs, as well as a hotel room to conduct business as a prostitute and she gives him sex for this. She further stated that nearly every morning Ronnie brings Coffee to her mother's house where Christina is living . . . [and] states that at times Christina will request that she [sic] brings Skittles which is [sic] for RX pills such as Vicodin and Oxycodone. Or she may ask of white which is [sic] for Cocaine powder or Hard which mean Rock Cocaine or Crack.

(*Id.*). Brooke stated that she saw Plaintiff give Christina drugs—which Brooke used as well. (*Id.*). Brooke reported further that Christina had admitted to her that Plaintiff "rents hotel rooms for [Christina] so she can prostitute and brings her drugs all in exchange for sex." (*Id.* at 2-3).

---

[5] All parties submitted the Johnston Report for consideration. (Doc. 55-3; Doc. 63-1; Rpt.). "[T]he Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, [as well as] documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken . . . ." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *Manley v. Utzinger*, No. 10-CV-2210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) (explaining that a court may consider "statements or documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which the plaintiff relied in bringing the suit"). Plaintiff cited this document and his theory regarding probable cause requires consideration of observations contained therein (*see, e.g.*, Compl. ¶¶ 58, 60, 67, 107-08, 115-16; Opp. at 5-6, 8, 11-12, 14, 17-20), therefore, the Court considers it. *See Fox v. City of New York*, No. 18-CV-9661, 2019 WL 3003993, at *4 (S.D.N.Y. July 10, 2019). Citations to exhibits correspond to the pagination generated by ECF.

Approximately two months later, on July 14, 2015, Johnston was informed that Christina had been reported missing by her mother and Plaintiff. (*Id*. at 3). Johnston reported this information to Detective Lieutenant DeColyse who "reinforced that [Johnston] was not to proceed with investigation until given direction" to do so. (*Id*.).

On September 2, 2015, Johnston was advised that Christina was in the custody of the Clarkstown Police Department and that she had given consent for a search of her mobile phone. (*Id*.). Johnston was informed that the content "showed incriminating evidence towards Ventillo's involvement in helping [Christina] perform acts of prostitution . . . as well as providing her with drugs and medications." (*Id*.). Two days later, Johnston met with detectives from the Clarkstown Police Department and reviewed text messages between Christina and Plaintiff "outlining not only meeting places but . . . him . . . lining up sexual clients for her and her requesting that he bring her specific types of drugs and alcohol." (*Id*.). The phone also contained a picture Plaintiff had taken of himself and sent Christina, a variety of explicit photos, and a video of a "male performing oral sex on a female." (*Id*.). In the weeks following, "[p]reservation letters" were sent to telephone service providers, and Johnston conferred with others—including representatives from the D.A.'s Office—and helped secure a search warrant from the Clarkstown Justice Court. (*Id*. at 3-5).

II.   The January 2016 Overdose and the Ensuing Investigation

Christina was found unresponsive in Plaintiff's car in the parking lot of the Raintree Motor Lodge in Congers, New York, on January 26, 2016. (Compl. ¶ 30; Rpt. at 5). Plaintiff admits that he "was present with Christina" (Compl. ¶ 31) and concedes in his opposition brief that he was "found . . . in his car with Christina" and that "Christina, a prostitute, suffered an overdose in [his] presence" (Opp. at 17-18). Christina overdosed on heroin. (Rpt. at 8; Opp. at 18). Christina was treated at the scene, given Narcan, and taken to the hospital. (Compl. ¶ 32; Rpt. at 5). Clarkstown

Police notified Johnston of the incident and that they had arrested an individual, Jennifer Hepp ("Hepp"), who told police "she was in contact with Ventillo . . . the whole time Christina was overdosing . . . ." (Rpt. at 5; *see also* Compl. ¶ 38).[6] Johnston interviewed Hepp and made the following notes:

> I . . . provided two separate photos to Hepp both of which she identified at [sic] Ronolfo Ventillo and stated she met him while she was incarcerated in the Rockland County Jail and knows him to be a corrections officer who was assigned to supervise her on several occasions. Hepp stated that while she was in jail Ventillo was very flirtatious with her and on occasions had asked straight out and had at times also hinted to her that he wanted sex. After she was released from jail Ventillo contacted Hepp . . . and till this date keeps in touch with her continually asking her to get him cocaine and heroin. In addition she stated she has had sex with him for money on what she described to be a handful of occasions. Hepp stated that Ventillo has sent people to her as clients who have paid her money for sex. Hepp stated that all day today 01/26/16 Ventillo, had been texting her requesting that she find him heroin then finally stated that he had located some cheaper then [sic] what she told him . . . . Hepp had also stated that she has had discussions with Christina . . . and has been told that Ventillo has gotten rooms for [Christina] to conduct her prostitution activities.

(*Id.*).[7] Hepp consented to a search of her mobile phone. (Compl. ¶¶ 39-40; Rpt. at 5).[8]

---

[6] The County Defendants filed the "Street Crime Case Report" prepared by Clarkstown Police. (*See* Doc. 61-2, Weissman Decl. Ex. B). The Court may and does consider this document. *Fox*, 2019 WL 3003933, at *4; *Awelewa v. New York City*, No. 11-CV-778, 2012 WL 601119, at *2-3 (S.D.N.Y. Feb. 23, 2012).

[7] The County Defendants filed the transcripts of law enforcement's January 26, 2016 and January 27, 2016 interviews with Hepp and Christina, respectively. (*See* Doc. 61-5, Weissman Decl. Ex. E; Doc. 61-6, Weissman Decl. Ex. F). While Plaintiff pled that the interviews occurred (Compl. ¶¶ 38-41), he does not reference or cite these transcripts. As such, the Court does not consider these documents.

[8] Defendants provided a number of documents reflecting communication between Plaintiff, Christina, Hepp, and others. (*See* Doc. 61-4, Weissman Decl. Ex. D; Doc. 61-7, Weissman Decl. Ex. G; Doc. 61-8, Weissman Decl. Ex. H; Doc. 61-9, Weissman Decl. Ex. I; Docs. 55-5, 55-6, Radi Decl. Ex. E). Plaintiff pled that Defendants "reviewed numerous text messages and emails from phone numbers and email addresses that were connected to Christina, Hepp, and Plaintiff" (Compl. ¶ 71; *see also id.* ¶¶ 39-40, 50-51), and while he does not dispute the accuracy or authenticity of those filings—or that they do, in fact, reflect communications with him—Plaintiff's allegations are too vague to conclude that these documents contain the communications referenced.

Johnston and Lynch interviewed Christina on January 28, 2016. (Compl. ¶ 41; Rpt. at 6).

According to the Johnston Report, Christina:

> confirmed that there has been a long standing understanding
> between her and Ventillo that he would provide her with money
> drugs and alcohol and she would have sex with him in return. She
> also confirmed that Ventillo had rented rooms for her at the Howard
> Johnson's hotel in Airmont for her to have sex with him in exchange
> for drugs and allowing her to perform escort service in the room that
> he rented for her. She advised that she would be willing to assist us
> in any way . . . to stop him from having sex with girls for money that
> he meets in jail. She claims that she met Ventillo while she was
> incarcerated and that [is] where [t]he topic of him paying her for sex
> started. She also stated that she would be willing to sign a statement
> to her accounts of this interview if I prepared one for her.

(Rpt. at 6). Christina provided that statement to Johnston and Lynch approximately three weeks

later. (Compl. ¶ 48; Rpt. at 8). The February 18, 2016 statement read in pertinent part:

> I'm writing the statement as an account of my interactions . . . with
> a person know[n] to me as Ronolfo Ventillo . . . . I met this person
> while I was incarcerated in the Rockland County Jail in 2013 and he
> is a correction officer who works there. During my time in the jail,
> I had informed him that I was going to need money when I got out
> so we had discussed and agreed that when I got out of jail, I would
> have sex with him in exchange for money.[9]
>
> On 11/01/2013 I was released from jail and Ronolfo Ventillo was in
> the parking lot up the road from the jail waiting for me as planned,
> he then took me to the Nyack Motor Lodge where we did have sex
> in exchange for $240.00. For the last two years we have continued
> our agreed arrangement where he would provide me both money and
> drugs to include cocaine, marijuana, valium, and heroin for sex. . . .
> As my drug habit progressed, I began to conduct escort services for
> men leading to Ventillo demanding that I give him preference in
> having sex with him above other clients . . . . [H]e has rented rooms
> for me to perform escort services . . . in Congers . . . in Nanuet, and
> . . . the Howard Johnsons [sic] in Airmont.
>
> [O]n 01/21/16 Ventillo . . . . agreed to get me heroin if I performed
> sex acts with him which he videotaped with his cell phone.

---

[9] The February 18, 2016 Statement is a single, continuous block without indentation of any kind. For ease of reference, the Court has inserted breaks into the block quotation and has incorporated the handwritten notations in the margins where appropriate.

> On 01/26/16 it was my birthday and I made plans for Ventillo to
> pick me up have lunch and get a room . . . if he could bring me
> heroin. . . . At around 1:30 he said he found someone with Heroin
> so we drove to Haverstraw where he picked up 2 bundles of Heroin.
> The next thing I remember was waking up in Nyack Hospital . . . .

(Doc. 55-4, Radi Decl. Ex. D; Doc. 61-3, Weissman Decl. Ex. C, "Stmt." at 2-3).[10] Between

meeting with Christina and securing her sworn statement, Johnston canvassed the hotels identified

and confirmed that from June 24, 2015 through September 7, 2015. Plaintiff rented four rooms

over nine nights at the Howard Johnson's in Airmont, New York. (Rpt. at 7).

The day Christina gave her statement, she offered to help Johnston and Lynch in "catching"

Plaintiff. (*Id.* at 8; Compl. ¶¶ 45, 47). Christina was instructed not to contact Plaintiff unless

Johnston authorized the contact and she gave Lynch and Johnston the password for her e-mail

account. (*Id.*). Less than two weeks later, despite offering to assist in the investigation, Christina

told Johnston that she "felt bad" for Plaintiff and Johnston learned that Christina had contacted

Plaintiff without Johnston's knowledge or approval. (*Id.* at 10). On March 2, 2016, Johnston noted:

> I did speak with John Lynch to discuss the progress of the past two
> days and we both agree that Christina is not a reliable informant and
> is not only reluctant to state that this [is] a business transaction to
> Ventillo, she has conversed with him in a manner that further
> supports that they have been involved in a tumultuous relationship
> for over 2 years but that it does not meet the criteria for a successful
> prosecution of patronizing prosecution. Based on the calls and text
> we feel that Ventillo will not provider [sic] Christina with any drugs
> until such time he has met with her and spent time with her as they
> have done so many times and fells [sic] that their relationship is back

---

[10] Plaintiff pled that Christina provided a "statement" in connection with the events of January 26, 2016
(Compl. ¶ 48) and maintains in significant part that probable cause rises and falls on information provided
by Christina during her cooperation in the investigation (*see id.* ¶¶ 21-22, 41-42, 45-50, 52, 54-59, 68-69;
*see also* Opp. at 12, 14, 16, 20-22). As such, Christina's sworn statement is considered at this stage. *See
Lee v. Town of Southampton*, No. 18-CV-3167, 2020 WL 1237198, at *8 (E.D.N.Y. Feb. 21, 2020)
(concluding that the "Criminal File," including the written statement provided to police, was proper to
consider on a motion to dismiss in a § 1983 action alleging false arrest and malicious prosecution), *adopted
by* 2020 WL 1234200 (E.D.N.Y. Mar. 13, 2020); *see also Oblio v. City Univ. of City of New York*, No. 01-
CV-5118, 2003 WL 1809471, at *4-5 (E.D.N.Y. Apr. 7, 2003).

> where it was. . . . We feel that any further involvement with Christina
> in this investigation will hinder the possibility of proving he has
> been purchasing narcotic[s] from known drug dealers.

(*Id*. at 10-11; *see also* Compl. ¶ 59). Later that day, Johnston met with Lynch, Falco, and others to

discuss the investigation. (Rpt. at 11; Compl. ¶ 61). Johnston believed that no criminal charges

could be "substantiate[d]," but was directed to continue investigating as administrative charges

were prepared. (Rpt. at 11; Compl. ¶¶ 60, 62). On April 13, 2016 and April 21, 2016, Johnston

met with Falco, Lynch, and others to outline a plan to charge Plaintiff with patronizing prostitutes.

(Rpt. at 11; Compl. ¶ 65). Johnston and Lynch arrested Plaintiff on April 26, 2016. (Rpt. at 11;

Compl. ¶ 74). Plaintiff was suspended from his employment that same day. (Compl. ¶ 118).

## III.    Prosecution and Acquittal

On April 26, 2016, Johnston signed and filed a Felony Complaint charging Plaintiff with

four crimes connected to Christina's overdose: (1) Criminal Possession of a Controlled Substance

in the Third Degree, a Class B Felony; (2) Criminal Sale of a Controlled Substance in the Third

Degree, a Class B Felony; (3) Official Misconduct, a Class A Misdemeanor; and (4) Patronizing a

Prostitute in the Third Degree, a Class A Misdemeanor. (Compl. ¶¶ 13-27; *see also* Doc. 63-2;

Doc. 55-7, Radi Decl. Ex. F; Doc. 61-11, Weissman Decl. Ex. K, "Fel. Compl." at 2). On October

13, 2016, the D.A.'s Office filed a Prosecutor's Information reducing the charges. (Compl. ¶¶ 95-

97, 101; *see also* Doc. 55-8, Radi Decl. Ex. G; Doc. 61-12, Weissman Decl. Ex. L, "Info.").[11]

Plaintiff rejected a plea bargain and proceeded to a jury trial. (Compl. ¶¶ 100, 111). Just

before the trial began, Johnston provided the D.A.'s Office with a copy of the Johnston Report,

---

[11] The Court considers the Felony Complaint and Prosecutor's Information, *Awelewa*, 2012 WL 601119, at
*2, but not excerpts of the trial transcript reflecting piecemeal segments of colloquy between the court and
counsel. (*See* Doc. 55-9, Radi Decl. Ex. H; Doc. 61-13, Weissman Decl. Ex. M). *See Jamaica Ash &
Rubbish Removal Co. v. Ferguson*, 85 F. Supp. 2d 174, 182 (E.D.N.Y. 2000) (noting that "an attorney's
statement or argument is not evidence").

which was in turn produced to Plaintiff the first day of the criminal trial. (*Id*. ¶¶ 112-13). The jury acquitted Plaintiff of all charges on June 30, 2017. (*Id*. ¶¶ 117).

IV.    Termination from County Employment

As the prosecution proceeded, the County initiated an administrative proceeding ("Arbitration") against Plaintiff to terminate his employment as a corrections officer. (*Id*. ¶ 123; *see also id*. ¶¶ 43-44, 62). The Arbitration began on January 24, 2018, without Plaintiff or his representative present, over Plaintiff's objection. (*Id*. ¶¶ 125-31). The charges upon which the Arbitration was based were violations of the provisions of the Rockland County Sheriff Department's Code of Conduct ("Code of Conduct"), which, *inter alia*, forbade corrections officers from associating with known criminals. (Doc. 55-10, Radi Decl. Ex. I; Doc. 61-15, Weissman Decl. Ex. O, "Arb. Award" at 13).[12] The Arbitrator concluded that the County "establish[ed] that just cause existed to terminate the employment of Corrections Officer Ranolfo Ventillo" on eleven administrative charges. (Arb. Award at 1-2, 38; Compl. ¶¶ 134-35). Plaintiff thereafter appealed the Arbitration Award to the New York State Supreme Court, County of Rockland, and the Arbitration Award was vacated with instruction that a new Arbitrator be selected within thirty days. (Compl. ¶¶ 136-38; *see also* Doc. 55-11, Radi Decl. Ex. J; Doc. 61-16, Weissman Decl. Ex. P "Sup. Ct. Dec.").[13] The appeal of that decision is pending. (Compl. ¶ 139).

_____

[12] The Court considers the Arbitration Award as Plaintiff references it in his Complaint and relied upon it as the product of the alleged due process violation. (*See* Compl. ¶¶ 123, 134-37, 160-64). The County Defendants also provided a copy of the Code of Conduct and the disciplinary charges pressed against Plaintiff for consideration on the instant motion. (Doc. 61-14, Weissman Decl. Ex. N; Doc. 61-17, Weissman Decl. Ex. Q). While Plaintiff referenced the Code of Conduct and the administrative action in the Complaint (*see* Compl. ¶¶ 43-44, 62, 181-85), because the Arbitration Award quotes the relevant portions of both documents, the Court need not consider them.

[13] The Court may take judicial notice of this decision. *See Awelewa*, 2012 WL 601119, at *2.

## STANDARD OF REVIEW

The Court may dismiss an action under Federal Rule of Civil Procedure 12(c) so long as the motion is made "[a]fter the pleadings are closed—but early enough not to delay trial . . . ." Fed. R. Civ. P. 12(c). When evaluating a motion for judgment on the pleadings under Rule 12(c), the Court applies the same "standard used in evaluating a motion to dismiss under Rule 12(b)(6)." *Rojas v. Berryhill*, 368 F. Supp. 3d 668, 669 (S.D.N.Y. 2019); *see also L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011) (observing that the standard for determining the sufficiency of a pleading under Rule 12(c) is "the same . . . standard applicable to dismissals pursuant to [Rule] 12(b)(6)." (alterations in original, internal quotation marks omitted)).

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53

10

(2d Cir. 1996). However, the presumption of truth "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

On a Rule 12(b)(6) motion, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken . . . ." *Heckman*, 568 F. App'x at 42; *see also Manley*, 2011 WL 2947008, at *1 n.1 ("The Court may consider . . . documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which plaintiff relied in bringing the suit."). Still, even if a document is not incorporated by reference into the complaint, the Court may consider a document "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFalco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).[14]

## **ANALYSIS**

I.   First Claim for Relief: False Arrest

Plaintiff's first claim for relief, false arrest under 42 U.S.C. § 1983, is pressed against Johnston and Lynch directly and Falco "as the Final Policy Maker" who "engaged in . . . [or] was deliberately indifferent" to Johnston and Lynch's conduct. (Compl. ¶¶ 142, 146). "A false arrest claim under Section 1983 'incorporates the elements of the state law where the arrest took place'— here, New York." *Johnson v. City of New York*, 18-CV-6256, 2020 WL 2732068, at *3 (S.D.N.Y.

---

[14] Lynch moved also to strike Plaintiff's claim for punitive damages under Federal Rule of Civil Procedure 12(f). (Lynch Br. at 25). In light of the conclusions reached herein, the Court does not address the motion under Rule 12(f) because it has been rendered academic.

May 26, 2020) (quoting *Youngblood v. City of New York*, No. 15-CV-3541, 2019 WL 6216498, at

*5 (S.D.N.Y. Nov. 21, 2019)). As such, to state a claim for false arrest under § 1983, Plaintiff must

plead "that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the

confinement, (3) the plaintiff did not consent to the confinement[,] and (4) the confinement was

not otherwise privileged." *Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003) (internal

quotation marks omitted). "[P]robable cause is an absolute defense to a false arrest claim."

*Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) (quoting *Torraco v. Port Auth. of New York*

*& New Jersey*, 615 F.3d 129, 139 (2d Cir. 2010) (alteration in original)); *see also Kilburn v. Vill.*

*of Saranac Lake*, 413 F. App'x 362, 363 (2d Cir. 2011); *McClenic v. Shmettan*, No. 15-CV-705,

2016 WL 3920219, at *4 (E.D.N.Y. July 15, 2016) (explaining that "probable cause is a complete

defense to a false arrest claim, even where the plaintiff was ultimately acquitted of the criminal

charges") (internal quotation marks omitted)). Defendants argue that probable cause to arrest

existed.[15] (*See* County Br. at 7-13; Lynch Br. at 17-19). The Court agrees.

"Probable cause to arrest . . . exists when the officer has knowledge or reasonably

trustworthy information of facts and circumstances that are sufficient to warrant a person of

reasonable caution in the belief that the person to be arrested has committed or is committing a

crime." *Wierzbic v. Howard*, --- F. App'x ---, 2020 WL 7038597, at *2 (2d Cir. Dec. 1, 2020)

(internal quotation marks omitted). This standard is an objective one and evaluates "the reasonable

conclusion to be drawn from the facts known to the officer at the time of the arrest." *Devenpeck v.*

*Alford*, 543 U.S. 146, 152 (2004). This standard requires that a court consider "the totality of the

circumstances and . . . be aware that probable cause is a fluid concept—turning on the assessment

---

[15] Given the Court's determinations herein, it does not reach Defendants' arguments as to arguable probable
cause or qualified immunity, or Lynch's argument that Plaintiff failed to plead his personal involvement in
any constitutional violations. (*See* County Br. at 13-14; Lynch Br. at 11-17; Lynch Reply at 3-5).

of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation marks omitted). As probable cause is an objective question, the arresting officer's subjective belief as to its existence is immaterial; moreover, "[t]he arresting officer need not have had probable cause to arrest the plaintiff for the specific offense invoked by the officer at the time of the arrest, or the offense with which the plaintiff was charged." *Tompkins v. City of New York*, 50 F. Supp. 3d 426, 433 (S.D.N.Y. 2014). Rather, probable cause "to arrest the suspect of any crime" will suffice. *Coleman v. City of New York*, No. 03-CV-4921, 2009 WL 705539, at *3 (E.D.N.Y. Mar. 16, 2009); *see also Butler v. Brito*, No. 15-CV-9718, 2017 WL 2116687, at *3 (S.D.N.Y. May 15, 2017). Furthermore, it is well-settled that hearsay can "establish probable cause." *Hamilton v. City of New York*, No. 15-CV-4574, 2019 WL 1452013, at *11 (E.D.N.Y. Mar. 19, 2019) (quoting *United States v. Parcel of Prop.*, 337 F.3d 225, 236 (2d Cir. 2003)). If there is reason to doubt a witness' credibility, corroborating evidence can support probable cause. *See Brodie v. Fuhrman*, No. 07-CV-4212, 2010 WL 1189347, at *5-6 (E.D.N.Y. Mar. 29, 2010).

Plaintiff insists that probable cause did not exist for two reasons—both of which rely on interpreting the Johnston Report and neither of which allege that the information provided to Defendants was false. The first argument is that probable cause did not exist because, on March 2, 2016, Johnston wrote that the information available did "not meet the criteria for a successful prosecution of patronizing prostitution" and that he "expressed" to other officials "that at this point in the investigation we cannot substantiate any criminal charges against" Plaintiff. (Rpt. at 10-11; Compl. ¶¶ 60-61, 67; Opp. at 20-21). As such, Plaintiff maintains that there was "no basis" for the arrest and that these notes reflect "the complete absence of any probable cause . . . ." (Opp. at 20). This argument fails because, as discussed above, probable cause to arrest depends upon the totality

13

of the circumstances surrounding the arrest; it does not turn on subjective beliefs. The totality of the circumstances described herein make clear that probable cause to believe "a crime" was committed existed with reasonable certainty.

The second argument maintains that probable cause did not exist because Johnston and Lynch found Christina unreliable. (Rpt. at 10-11; Compl. ¶ 69; Opp. at 12, 14, 16, 21-22). This argument fails as well. A review of the Johnston Report reveals that Christina was deemed unreliable as an informant because she contacted Plaintiff in violation of Johnston's instructions and "felt bad" for Plaintiff, not because information she provided was inaccurate. (Rpt. at 10-11). Moreover, assuming *arguendo* that Christina's credibility was questionable, other sources reflected in the Johnston Report—namely Brooke, Hepp, and Johnston's own investigation (none of which Plaintiff mentioned, let alone disputed)—corroborated Christina's account of Plaintiff's activities. Indeed, while it was necessary for probable cause to exist as to only one crime—however small and whether or not Plaintiff was charged with it—the totality of information available at the time of arrest would warrant a person of reasonable caution in the belief that Plaintiff committed not only "a crime" but each crime with which Johnston charged Plaintiff in the Felony Complaint. The Court considers each charge in the Felony Complaint *seriatim*.

a.   <u>First Charge: Criminal Possession of a Controlled Substance in the Third Degree</u>

The first crime with which Johnston charged Plaintiff in connection with Christina's overdose was Criminal Possession of a Controlled Substance in the Third Degree under N.Y. Penal Law § 220.16(1). (Compl. ¶¶ 14-15; Fel. Compl. at 2). "A person is guilty of criminal possession of a controlled substance in the third degree when he knowingly and unlawfully possesses . . . a narcotic drug with intent to sell it." N.Y. Penal Law § 220.16(1). "'Sell' means to sell, exchange, give or dispose of to another, or to offer or agree to do the same." N.Y. Penal Law § 220.00(1).

With respect to this charge, Plaintiff urges specifically "that there was no factual predicate supporting probable cause . . . to believe that Plaintiff had knowingly and unlawfully possessed a narcotic drug at all, must less with intent to sell same." (Opp. at 14). This argument relies on Johnston's conclusion that Christina was unreliable and his opinion over two months before the arrest that Plaintiff could not be charged with a crime successfully. (*Id.*). Even if the Court disregarded information provided by Christina—something it need not do—the following information was known to Johnston: (1) Brooke told Johnston that Plaintiff gave Christina alcohol, "RX pills such as Vicodin and Oxycodone," cocaine, or crack cocaine (Rpt. at 2); (2) Hepp informed Johnston that Plaintiff contacted her looking for heroin the day of Christina's overdose and that Plaintiff located some (*id.* at 5); and (3) Christina was found, suffering from a heroin overdose, in Plaintiff's car (*id.* at 5, 8; Compl. ¶¶ 30-33; Opp. at 17-18). Plaintiff even concedes that Christina overdosed in his presence. (Opp. at 18). In its totality, this information was sufficient to warrant a person of reasonable caution in the belief that Plaintiff committed this crime.

   b.   Second Charge: Criminal Sale of a Controlled Substance in the Third Degree

   The second crime with which Plaintiff was charged was Criminal Sale of a Controlled Substance in the Third Degree under N.Y. Penal Law § 220.39(1). (Compl. ¶¶ 17-18; Fel. Compl. at 2). "A person is guilty of criminal sale of a controlled substance in the third degree when he knowingly and unlawfully sells . . . a narcotic drug." N.Y. Penal Law § 220.39(1). Plaintiff's argument on this point is that "Defendants investigated Ventillo for months—and tried, without success, to get Plaintiff to violate the law." (Opp. at 15). At the time of arrest, there was probable cause to believe Plaintiff intended to "sell," and indeed "sold," heroin to Christina on January 26, 2016. (*See* discussion *supra*). That an ensuing investigation did not bear "any fruit" as to additional sales (Opp. at 15) does not alter the analysis of probable cause surrounding the overdose. The

totality of the circumstances would warrant a person of reasonable caution in believing that Plaintiff committed this crime as well.

    c.  <u>Third Charge: Official Misconduct</u>

The third charge pressed against Plaintiff was Official Misconduct under N.Y. Penal Law § 195.00(2) ("Official Misconduct"). (Compl. ¶¶ 23-24; Fel. Compl. at 2). Under that provision, "[a] public servant is guilty of official misconduct when, with intent to obtain a benefit or deprive another person of a benefit . . . [h]e knowingly refrains from performing a duty which is imposed upon him by law or is clearly inherent in the nature of his office." N.Y. Penal Law § 195.00(2). Plaintiff, without citing any precedent, argues in conclusory fashion that "[t]here were simply no facts suggesting that Plaintiff acted or refused to act in his 'official capacity' in a manner designed to obtain a benefit to deny another of such a benefit." (Opp. at 15).

As a corrections officer, the County expected Plaintiff to, *inter alia*, refrain from "any action, deed or business practice or any endeavor that would conflict with the performance of [his] duty or the interests of" the Rockland County Sheriff's Department, avoid activities "reflect[ing] unfavorably upon [his] moral character or fitness," maintain the "confidence and respect of the public," and shun "[a]ny act of [sic] offense that brings questions about, or cast dispersions upon, [his] character or fitness for public service and trust . . . ." (Arb. Award at 18, 23-25). A "benefit" is statutorily defined as "any gain or advantage to the beneficiary and includes any gain or advantage to a third person pursuant to the desire or consent of the beneficiary," N.Y. Penal Law § 10.00(17), and New York State courts have explained that the word can "include[] more than financial gain and can encompass political or other types of advantages." *Conde v. Kelly*, 990 N.Y.S.2d 166, 167 (App. Div. 2014) (quoting *People v. Feerick*, 714 N.E.2d 851, 856 (N.Y. 1999)). The totality of the facts known at the time of arrest was sufficient to warrant a person of

reasonable caution in the belief that Plaintiff violated his duty by failing to get Christina medical assistance and that he did so to avoid criminal and/or administrative discipline.[16]

     d.   <u>Fourth Charge: Patronizing a Prostitute in the Third Degree</u>

The final crime with which Johnston charged Plaintiff was Patronizing a Prostitute in the Third Degree under N.Y. Penal Law § 230.04 ("Patronizing a Prostitute"). (Compl. ¶¶ 27-28; Fel. Compl. at 2). Under that statute, "[a] person is guilty of patronizing a prostitute in the third degree when he or she patronizes a prostitute." N.Y. Penal Law § 230.04. Plaintiff concedes that "the law . . . requires only a person to hire another, regardless of relationship," but insists that probable cause was lacking because Christina was his girlfriend. (Opp. at 16). Disregarding the fact that Plaintiff concedes that Christina was a prostitute who overdosed in his presence (*id*. at 17-18), a review of the Complaint and documents integral thereto reveal: (1) Brooke told Johnston that Plaintiff provided Christina with alcohol, drugs, and/or money in exchange for sex (Rpt. at 2-3); (2) Christina confirmed that Plaintiff "would provide her with money drugs and alcohol and she would have sex with him in return" (*id*. at 6); (3) Christina told Johnston that Plaintiff "had rented rooms for her at the Howard Johnson's hotel in Airmont for her to have sex with him in exchange for drugs" (*id*.); (4) Johnston confirmed that over two months in 2015 Plaintiff had rented four rooms over nine nights at the Howard Johnson's in Airmont, New York (*id*. at 7); (5) Hepp told Johnston that Plaintiff had contacted her on January 26, 2016 seeking heroin and that Plaintiff ultimately "located some cheaper" than what Hepp offered (*id*. at 5); and (6) Christina was found with Plaintiff, in Plaintiff's car, in a hotel parking lot, suffering from a heroin overdose (*id*. at 5, 8; Compl. ¶¶ 30-34; Opp. at 17-18). The totality of these facts, known at the time of arrest, would warrant a person of reasonable caution in believing that Plaintiff committed this crime.

---

[16] A person of reasonable caution could believe also that Plaintiff violated his duty to avoid associating with known criminals (*see* Arb. Award at 13) in exchange for the benefits of sex and/or drugs.

Viewing the Complaint in the light most favorable to Plaintiff and giving him the benefit of every inference, the totality of the circumstances would warrant a person of reasonable caution in the belief that Plaintiff committed each crime charged in the Felony Complaint. This claim for relief is dismissed.

II.    Second Claim for Relief: Malicious Prosecution

The second claim for relief, malicious prosecution under 42 U.S.C. § 1983, is once again alleged against Johnston and Lynch directly and against Falco as "the Final Policy Maker" supporting their allegedly unlawful activities. (Compl. ¶¶ 149-50, 152). As with false arrest, "[i]n order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must . . . establish the elements of a malicious prosecution claim under state law." *Frost v. New York City Policy Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010)). Accordingly, the claim requires: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Id.* (internal quotation marks omitted). However, when pressing the claim under § 1983, the plaintiff must show also "that there was (5) a sufficient post-arraignment liberty restraint to implicate his Fourth Amendment rights." *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000). As with false arrest, "the existence of probable cause is a complete defense to a claim of malicious prosecution," *Frost*, 980 F.3d at 242 (quoting *Stansbury*, 721 F.3d at 94-95)), and an acquittal "does not establish . . . malicious prosecution," *Youngblood*, 2017 WL 7804731, at *8. Defendants maintain that probable cause requires dismissal of this claim for relief. (County Br. at 14-17; Lynch Br. at 19-20). The Court again agrees.[17]

---

[17] Lynch argues also that he did not initiate the criminal prosecution. (Lynch Br. at 20-21). Given the Court's conclusions, it does not reach this issue.

"Probable cause, in the context of malicious prosecution, has . . . been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Frost*, 980 F.3d at 243 (quoting *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003) (alteration in original)); *see also Bernshtein v. City of New York*, 496 F. App'x 140, 142 (2d Cir. 2012) (explaining that probable cause "turns on the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant" (internal quotation marks omitted)). This standard may seem "slightly higher than the standard for false arrest cases," *Stansbury*, 721 F.3d at 95, but the only difference between the two is that here "the existence, or lack, of probable cause is measured as of the time the judicial proceeding is commenced . . . , not at the time of the preceding warrantless arrest," *Oquendo v. City of New York*, No. 14-CV-2582, 2017 WL 6729850, at *5 (E.D.N.Y. Nov. 15, 2017) (quoting *Peterson v. Regina*, 935 F. Supp. 2d 628, 642 (S.D.N.Y. 2013) (alteration in original)), *aff'd*, 774 F. App'x 703 (2d Cir. 2019). As such, "[i]f probable cause existed at the time of arrest, it continues to exist at the time of prosecution unless undermined by the discovery of some intervening fact." *Id.* (quoting *Johnson v. Constantellis*, 221 F. App'x 48, 50 (2d Cir. 2007)). This analysis, however, requires probable cause for each charge; "[t]herefore, when considering Plaintiff's malicious prosecution claim, the Court must separately consider each count with which Plaintiff was charged." *Walker v. City of Utica*, No. 12-CV-01587, 2015 WL 1013865, at *6 (N.D.N.Y. Mar. 9, 2015).

A malicious prosecution claim requires a "lack of probable cause for commencing the proceeding." *Frost*, 980 F.3d at 242 (internal quotation marks omitted). Johnston commenced the criminal proceeding by signing and filing the Felony Complaint. (Compl. ¶¶ 66, 74, 79; Fel. Compl.); *Nickey v. City of New York*, No. 11-CV-3207, 2013 WL 5447510, at *7 n.8 (E.D.N.Y. Sept. 27, 2013) ("By statute a criminal action now commences with the filing of an accusatory

19

instrument, which includes a felony complaint." (quoting *People v. Samuels*, 400 N.E.2d 1344, 1346 (N.Y. 1980)). As explained *supra*, because Defendants had probable cause to arrest Plaintiff for each crime listed in the Felony Complaint, probable cause existed "at the time of prosecution unless undermined by discovery of some intervening fact." *Oquendo*, 2017 WL 6729850, at *5 (internal quotation marks omitted); *see also Gaston v. City of New York*, 851 F. Supp. 2d 780, 793 (S.D.N.Y. 2012) ("Where . . . probable cause existed for the arrest itself, a plaintiff pursuing a malicious prosecution claim must establish that probable cause somehow 'dissipated' between the time of arrest and commencement of the prosecution." (quoting *Johnson v. City of New York*, No. 08-CV-5277, 2010 WL 2292209, at *6 (S.D.N.Y. June 7, 2010) (alteration in original)). Here, the arrest occurred, and the criminal proceeding commenced, on the same day: April 26, 2016. (Compl. ¶¶ 66, 74, 79; Fel. Compl.). Plaintiff has not alleged the discovery of any fact that would vitiate probable cause between his arrest and the commencement of the prosecution; in fact, his claim rests on the premise that because "[t]here was no basis for Plaintiff's arrest" the ensuing prosecution was unlawful. (Compl. ¶ 150). Consequently, the totality of the facts would lead a reasonably prudent person to believe Plaintiff guilty of every crime charged in the Felony Complaint.

With respect to the parties' dispute regarding the viability of charges contained in the Prosecutor's Information, the Court need not consider those charges. Johnston commenced the criminal action with the Felony Complaint and levied four charges against Plaintiff; the D.A.'s Office thereafter continued the action by filing a Prosecutor's Information and pursuing five "reduced" (*i.e.*, non-felony) charges. (Compl. ¶¶ 13-27, 93, 102, 104, 106; *compare* Fel. Compl., *with* Info.). "In general, courts presume the prosecutor exercises independent judgment in deciding whether to initiate or continue a criminal proceeding." *Williams v. City of New York*, No. 06-CV-

6601, 2009 WL 3254465, at *8 (E.D.N.Y. Oct. 9, 2009). A prosecutor's "intervening" decision to reduce and pursue charges against a plaintiff will break the chain of causation linked to an officer, *Bernstein v. City of New York*, No. 06-CV-895, 2007 WL 1573910, at *6 (S.D.N.Y. May 24, 2007), unless there is "evidence that the police officer misled or pressured the official who could be expected to exercise independent judgment." *Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999). Plaintiff alleged that after Johnston commenced the action the D.A.'s Office "began investigating the specifics of the case," and that the D.A.'s Office "[s]ubsequently . . . reduced the Felony Offenses . . . and proceeded with the case." (Compl. ¶¶ 93, 101; *see also id.* ¶ 95). The charges pressed by the D.A.'s Office following its investigation were: (1) Patronizing a Prostitute on November 1, 2013; (2) Patronizing a Prostitute on January 21, 2016; (3) Patronizing a Prostitute on January 26, 2016; (4) Official Misconduct on January 26, 2016; and (5) Reckless Endangerment under N.Y. Penal Law § 120.20 on January 26, 2016. (Info.). Plaintiff alleged generally that these charges reveal that "Johnston and Lynch continued to either misrepresent the evidence . . . or . . . conceal material facts about the case," (Compl. ¶ 105), but he did not specify what was "misrepresented" or "concealed" apart from references to Johnston's opinion, approximately two months before the arrest, as to whether Plaintiff could be charged successfully. (*Id.* ¶¶ 107, 112-16); *see also Kilburn*, 413 F. App'x at 364 (noting that an officer's opinion "does not constitute an exculpatory fact").

In light of the above, the Court concludes that probable cause existed at the commencement of the proceeding because the totality of the circumstances would lead a reasonably prudent person to believe Plaintiff guilty of every crime charged in the Felony Complaint. As such, the malicious prosecution claim cannot survive and is dismissed.

III.    Third Claim for Relief: Deprivation of the Right to a Fair Trial

The third claim for relief, deprivation of the right to a fair trial under 42 U.S.C. § 1983, alleges that Johnston and Lynch "either presented false or misleading evidence to the Rockland County District Attorney's Office or withheld evidence" and that Falco "either directed the conduct . . . or in the alternative[] was deliberately indifferent" to the detectives' conduct. (Compl. ¶¶ 155, 158). There are two species of this claim, and the Complaint seeks relief under both. The first species occurs when a plaintiff is deprived of a fair trial due to the fabrication of evidence. That claim exists when "an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result." *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012). The second, which is "essentially a civil claim seeking damages for a *Brady* violation" occurs "where the police or prosecutors withhold material exculpatory or impeaching evidence from a defendant." *Fappiano v. City of New York*, 640 F. App'x 115, 118 (2d Cir. 2016). Here, neither is viable.

As to the first theory of recovery, Defendants argue that Plaintiff failed to identify any fabricated information. (County Br. at 18; Lynch Br. at 23). As Plaintiff did not respond to Defendants on this point, he "effectively concede[d] . . . [the] argument[] by his failure to respond . . . ." *30 Clinton Place Owners Inc. v. City of New Rochelle*, No. 13-CV-3793, 2014 WL 890482, at *1 n.1 (S.D.N.Y. Feb. 27, 2014) (quoting *Felske v. Hirschmann*, No. 10-CV-8899, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012)); *see also Dangelo v. Client Servs., Inc.*, No. 19-CV-1915, 2020 WL 5899880, at *4 (E.D.N.Y. June 11, 2020) (recommending claims be deemed abandoned for plaintiff's failure to respond to arguments for dismissal), *adopted by* 2020 WL 4187903 (E.D.N.Y. July 21, 2020). This alone warrants dismissal of this claim for relief. However, even if

that were not the case, Plaintiff has not pled plausibly that Defendants fabricated any evidence. Plaintiff alleges that "Defendants did not have a shred of evidence that Plaintiff committed any crime or engaged in any criminality—much less probable cause that he had done so" and that they "fabricat[ed] the entirety of the instant Criminal Charges" leading to the arrest. (Compl. ¶¶ 73-74). Such a conclusory claim that Defendants "fabricated" evidence simply by forwarding information they possessed—which supported probable cause (*see* discussion *supra*)—is insufficient to plead the existence of fabricated information. *Hutchins v. Solomon*, No. 16-CV-10029, 2018 WL 4757970, at *16 (S.D.N.Y. Sept. 29, 2018) ("Conclusory statements that officers fabricated evidence do not suffice to state a claim for the denial of a fair trial."); *Longo v. Ortiz*, No. 15-CV-7716, 2016 WL 5376212, at *6 (S.D.N.Y. Sept. 26, 2016) (finding that the allegations failed to "state with the requisite specificity the evidence that was purportedly fabricated").

As to the second theory, the claim relates to production of the Johnston Report. (*See* Compl. ¶¶ 112-16). However, "[t]he jury verdict acquitting Plaintiff of the criminal charges resulting from his arrest 'negates any violation of his *Brady* rights and extinguishes any Section 1983 due process claim that might arise from Defendants' alleged suppression of exculpatory evidence." *Cambisaca v. Ruhe*, No. 17-CV-87, 2019 WL 2866072, at *12 (S.D.N.Y. July 3, 2019) (quoting *Ambrose v. City of New York*, 623 F. Supp. 2d 454, 471 (S.D.N.Y. 2009)). In short, "[c]ourts have categorically rejected denial of a right to a fair trial claims based on *Brady* violations where the plaintiff was not convicted in the underlying criminal trial." *McClean v. Cty. of Westchester*, No. 17-CV-4492, 2018 WL 6329420, at *18 (S.D.N.Y. Dec. 3, 2018).

As Plaintiff has not identified sufficiently the evidence fabricated by Defendants and he was acquitted after a jury trial, the claim for deprivation of the right to a fair trial is dismissed.

IV.     Fourth Claim for Relief: Procedural Due Process Violation

The fourth claim for relief, a violation of procedural due process under 42 U.S.C. § 1983, posits that the County and Falco "denied Plaintiff his rights . . . by terminating him from his position as a Corrections Officer, without out due process of law . . . ." (Compl. ¶ 161). A procedural due process claim in the employment context "is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Domeneck v. City of New York*, No. 18-CV-7419, 2019 WL 5727409, at *9 (S.D.N.Y. Nov. 5, 2019) (quoting *Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012)); *see also Bresilien v. City of New York*, No. 16-CV-4857, 2020 WL 1275470, at *12 (E.D.N.Y. Mar. 17, 2020). Defendants do not dispute that Plaintiff had a property interest in his employment; rather, they insist that the Article 75 process Plaintiff invoked afforded him due process. (County Br. at 19-21; Lynch Br. at 23-24). The Court agrees.[18]

Plaintiff alleged—and documents integral to the Complaint reveal—that after the Arbitration Award was issued, he appealed the decision to the New York State Supreme Court in a proceeding under Article 75 of the New York Civil Practice Law and Rules ("C.P.L.R."), and the Arbitration Award was reversed. (Compl. ¶¶ 134-38; Sup. Ct. Dec.). It is well established that the existence of the Article 75 procedure constitutes due process as a matter of law. *See, e.g.*, *Davis v. New York City Dep't / Bd. of Educ.*, No. 14-CV-2281, 2015 WL 5772204, at *9 (E.D.N.Y. Sept. 29, 2015) ("Post-deprivation remedies under Article 75 and Article 78 are more than adequate post-deprivation remedies for purposes of due process." (internal quotation marks omitted)); *Williams v. New York City Dep't of Educ. ex rel. City Sch. Dist.*, No. 12-CV-8518, 2013 WL 5226564, at *10 (S.D.N.Y. Sept. 17, 2013) (recommending dismissal of the procedural due process

---

[18] Again, Plaintiff's failure to oppose this argument affords the separate basis for dismissal which the Court adopts. *See Dangelo*, 2020 WL 5899880, at *4; *30 Clinton Place Owners Inc.*, 2014 WL 890482, at *1 n.1.

claim because Articles 75 and 78 of the C.P.L.R. provided a meaningful post-deprivation remedy), *adopted by* 2014 WL 1383661 (S.D.N.Y. Mar. 26, 2014), *aff'd* 602 F. App'x 28 (2d Cir. 2015). In sum, "[t]he Second Circuit has held that these proceedings provide adequate postdeprivation [sic] remedies such that their availability negates any procedural due process claim." *Id*. at *10.

As Plaintiff had—and, in fact, exercised—the mechanism available to him to challenge the Arbitration Award under C.P.L.R. Article 75, he cannot plead that he was deprived of a property interest without due process. The claim is dismissed.

V.   Remaining Claims for Relief

Plaintiff's remaining claims for relief are: (1) failure to intervene to prevent constitutional violations against Lynch, Johnston, and Falco (Compl. ¶¶ 165-69); (2) a *Monell* claim based on Falco's knowledge and approval of—or participation in—the various constitutional violations outlined above (Compl. ¶¶ 170-78); and (3) a *Monell* claim based on a policy or practice of using the D.A.'s Office as a mechanism to remove corrections officers (*id*. ¶¶ 179-86). In order to state any of these claims for relief, Plaintiff must plead the existence of a constitutional violation upon which they are based. *See, e.g.*, *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct."); *Chahine v. City of New York*, No. 19-CV-276, 2020 WL 2555228, at *3 (S.D.N.Y. May 20, 2020) (dismissing a failure to intervene claim because the plaintiff had "not plausibly ple[d] that his constitutional rights were violated by any officer").

As Plaintiff failed to state—and Defendants are entitled to judgment on the pleadings with respect to—the four underlying claims of relief (*i.e.*, false arrest, malicious prosecution, deprivation of the right to a fair trial, and violation of procedural due process), Plaintiff has not

pled the constitutional violation required for the final three claims of relief to proceed. Accordingly, these claims for relief are dismissed as well.[19]

## VI.   Lynch's Crossclaims

As noted above, Lynch filed an Amended Answer that pressed two crossclaims against the County Defendants. (*See* discussion *supra*). Lynch's crossclaims were for: (1) "common law indemnification and contribution;" and (2) "contractual defense and indemnification." (Doc. 49 Doc. 49 ¶¶ 223-29). Under 28 U.S.C. § 1367(c)(3), "district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." Here, the Court's subject-matter jurisdiction was based on the fact that Plaintiff brought claims alleging violations of his constitutional rights. (*See* Compl. ¶¶ 2-3; *see also* 28 U.S.C. §§ 1331, 1343). As the Court dismisses Plaintiff's action, no basis of federal jurisdiction remains, and the Court declines to retain supplemental jurisdiction over Lynch's crossclaims and dismisses them without prejudice. *See Curanaj v. Cordone*, No. 10-CV-5689, 2012 WL 4221042, at *18 (S.D.N.Y. Sept. 19, 2012).

---

[19] Plaintiff did not respond to Defendants' arguments as to the failure to intervene or *Monell* claim based on County policy. (*Compare* County Br. at 21-24 *and* Lynch Br. at 24-25, *with generally* Opp.). As with the due process claim, this is a sufficient and independent basis to dismiss these claims which the Court adopts. *See Dangelo*, 2020 WL 5899880, at *4; *30 Clinton Place Owners Inc.*, 2014 WL 890482, at *1 n.1.

## **CONCLUSION**

Based upon the foregoing, Defendants' motions for judgment on the pleadings are GRANTED. As there is no federal liability for Defendants and the action has been dismissed, the Court also DISMISSES Lynch's crossclaims against the County Defendants without prejudice. The Clerk of the Court is respectfully directed to terminate the pending motion sequences at Docs. 54 and 57, and to close this case.

**SO ORDERED:**

Dated:   New York, New York
         December 18, 2020

_____

PHILIP M. HALPERN
United States District Judge